IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANET MORRISSEY | * |
| Plaintiff, | * |
| v. | * Civil No. SAG-21-00899-SAG |
| CES COMPUTER ENHANCEMENT SYSTEMS, INC., *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Janet Morrissey brought this suit against her former employer, CES Computer Enhancement Systems, Inc. ("CES"), and its owner, Richard Robertson (collectively, "Defendants"), asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and Maryland state law for unpaid overtime, sales commissions, and vacation time. Defendants have filed a motion for summary judgment, ECF 45, which is now fully briefed. *See* ECF 45-1, 48-1, 51. This Court has reviewed the parties' memoranda and the exhibits attached thereto. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' motion will be denied.

I.   **FACTUAL BACKGROUND**

The following facts are viewed in the light most favorable to Morrissey as the non-moving party. CES is a company based in Frederick, Maryland, that provides information technology ("IT") services, in addition to selling and servicing computer hardware and software. ECF 45-4 ¶ 2. Robertson is CES's founder and owner. *Id*. ¶ 1. In October, 2018, Robertson hired Morrissey as a "Business Development Manager." *Id*. ¶¶ 3-4; ECF 45-5 at 1. Robertson testified that he was

impressed by Morrissey's business experience and that he "just need[ed] more help at the time" because "I couldn't handle any sales. I had nobody to do sales at all." ECF 48-2 at 94:1-9, 94:18-21. Shortly after Morrissey was hired, she and Robertson began dating. ECF 45-2 at 249:8-11.

Morrissey's employment agreement included a salary provision which set forth the terms of her compensation:

> Pay will be based on commission as a percentage of net sales profit. The base salary is an unrecoverable draw against the salary of $40,000/year. Commission will be paid at a rate of 18% of net profit of hardware sales and 12% per billable hour rate for service (labor) related sales. All yearly service contracts will be based an expected number of billable hours per month. Base salary is based on a minimum 40 hour work week.

ECF 45-5 at 4.

While at CES, Morrissey would generally begin working as early as 5:30 a.m., and she frequently worked until late at night. ECF 45-2 at 526:8-11. She also sometimes worked weekends. *Id*. at 536:1-19. In total, Morrissey estimated that she worked 68 hours per week. *Id*. Despite routinely working more than the typical 40-hour work week, Morrissey was not paid overtime. *See* ECF 51-4, 51-5, 51-6. Rather, she was paid a biweekly salary of $1,600, which later increased to $1,760. *Id*. Morrissey also regularly received additional payments that were labeled as "bonus" payments in CES's payroll records. ECF 51-4, 51-5. Robertson contends these payments were in fact made to "stay ahead of [Morrissey's] commission," ECF 45-3 at 353:6-10, though he acknowledged that, because of issues with CES's payroll system, he was unable to precisely calculate Morrissey's commissions for the majority of her time with the company, ECF 48-2 at 31:3-34:8, 433:12-17. Morrissey, on the other hand, testified that the bonuses were "random," and that Robertson gave the bonuses to her and other CES employees for doing good work or completing special projects. ECF 48-3 at 365:2-368:21, 390:6-17. Morrissey also claimed that her bonus payments for 2020 were later reclassified as commission payments in CES's payroll system.

ECF 48-3 at 619:17-620:16; *see also* ECF 51-6. Morrissey's employment at CES was terminated in December, 2020. ECF 45-2 at 135:8.

Morrissey filed this suit on April 9, 2021. ECF 1. She asserts claims under the FLSA (Count I) and the Maryland Wage and Hour Law ("MWHL") (Count II) for unpaid overtime. ECF 17 ¶¶ 28-47. She also alleges violations of the Maryland Wage Payment and Collection Law ("MWPCL") for unpaid commissions and vacation time (Counts III and IV), along with state law claims for Breach of Contract (Count V), Unjust Enrichment (Count VI), and Promissory Estoppel (Count VII). *Id*. ¶¶ 48-90.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof of [its] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Casey*, 823 F. Supp. 2d at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere

speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Summary judgment shall also be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. ANALYSIS

Defendants seek summary judgment on Counts I and II on the grounds that Morrissey is exempt from the overtime requirements of the FLSA and MWHL. Defendants also contend that this Court should decline supplemental jurisdiction over Morrissey's additional state law claims.

#### A. FLSA Claim (Count I)

"[T]he FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1138 (2018) (citing 29 U.S.C. § 207(a)). However, these overtime compensation requirements do not apply to exempt employees. *Lovo v. Am. Sugar Ref., Inc.*, Civ. No. RDB-17-418, 2018 WL 3956688, at *7 (D. Md. Aug. 17, 2018) (citing 29 U.S.C. § 213). "The FLSA exemptions are affirmative defenses, and the

4

employer bears the burden of proof to establish 'by clear and convincing evidence that an employee qualifies for exemption.'" *Pang v. Adult Day Health, Inc.*, Civ. No. DLB-19-2283, 2022 WL 2869161, at *7 (D. Md. July 21, 2022) (quoting *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993)).[1] "To be clear and convincing, evidence must place in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are highly probable." *Cannon v. Peck*, 36 F.4th 547, 566 (4th Cir. 2022) (quotation omitted).

Here, Defendants assert two exemptions to the FLSA's overtime pay requirements: the exemption for certain commission-based employees, 29 U.S.C. § 207(i) (the "bona fide commission exemption"), and the exemption for administrative employees, 29 U.S.C. § 213(a)(1) (the "administrative exemption").

### 1. Bona Fide Commission Exemption

To satisfy the bona fide commission exemption, an employer must demonstrate that: (1) the employee was employed by a retail or service establishment; (2) the employee's regular rate of pay exceeded one and one-half times the minimum hourly rate; and (3) more than half of the employee's compensation for a representative period (not less than one month) represented commissions on goods or services. 29 U.S.C. § 207(i); 29 C.F.R. § 779.412.

Initially, the parties dispute whether Defendants have waived their ability to assert this exemption as a defense. That is, Morrissey argues that Defendants failed to specifically plead this

---

[1] In *Encino Motorcars*, the Supreme Court clarified that the FLSA's exemptions are to be given a "fair reading" and should not be narrowly construed. 138 S. Ct. at 1142. However, because "nothing in the *Encino* decision relates to evidentiary burdens[,]" courts in this district "have continued to apply the 'clear and convincing' standard" for FLSA exemptions post-*Encino*. *Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 146 (D. Md. 2019). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). This Court notes, however, that even under a preponderance of the evidence standard, Defendants would still not be entitled to summary judgment because of the factual disputes discussed below.

5

exemption in their answer, ECF 9, and amended answer, ECF 18. "[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense . . . ." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). And under Federal Rule of Civil Procedure 8(c)(1), a party responding to a pleading "must affirmatively state any avoidance or affirmative defense." This Court has routinely held that that the heightened pleading standard enunciated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 677–84 (2009), applies to affirmative defenses. *See, e.g.*, *McCoy v. Transdev Servs., Inc.*, Civ. No. DKC-19-2137, 2022 WL 951996, at *24 (D. Md. Mar. 30, 2022) ("District courts in this district have mostly, if not unanimously, applied the heightened *Twombly*-*Iqbal* pleading standard to affirmative defenses . . . ."). That standard "requires that allegations be more than 'labels or conclusions,' and that facts must be set forth demonstrating the claim is 'plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Morrissey contends that Defendants fail to satisfy the *Twombly*-*Iqbal* standard because they did not specifically plead the bona fide commission exemption as an affirmative defense. Instead, Defendants' amended answer merely states that "Plaintiff is exempt from overtime under the FLSA and MWHL." ECF 18 at 22. While this conclusory statement undoubtedly does not satisfy *Twombly*-*Iqbal*, that does not necessarily mean that Defendants' exemption defense is waived. In general, an affirmative defense is not waived when it is first raised in a pre-trial dispositive motion "absent unfair surprise or prejudice to the plaintiff." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999), *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003); *see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004) ("[I]t is well established that an affirmative defense is not waived absent unfair surprise or prejudice."). The Fifth Circuit recently rejected an argument similar to

Morrissey's in an FLSA case, concluding that a defendant's "technical failure" to plead the bona fide commission exemption as an affirmative defense did not result in waiver, because "[h]ow and how much" plaintiffs were paid "was clearly at issue" in the case. *Taylor v. HD & Assocs., L.L.C.*, 45 F.4th 833, 838-39 (5th Cir. 2022). The same logic applies here. While Morrissey generally asserts that she is prejudiced by allowing Defendants to assert the bona fide commission exemption at this stage, she fails to explain why this is so. For example, Morrissey has not indicated that she requires additional discovery to respond to Defendants' argument in support of the defense. Furthermore, the very nature of this lawsuit, which involves a retail employee operating under a seemingly commission-based employment agreement, should have provided Morrissey with ample notice that the bona fide commission exemption would be at issue. "Under the circumstances of this case, where plaintiff[ has] not been unduly prejudiced by [Defendants'] error, it would elevate form over substance to deny [Defendants] the opportunity to present all of [their] legal arguments." *Baltimore Cnty. FOP Lodge 4 v. Baltimore Cnty.*, 565 F. Supp. 2d 672, 675 (D. Md. 2008) (construing defendant's motion for summary judgment as a motion to amend its answer, where the defendant failed to plead two FLSA exemptions).

While Defendants may assert the bona fide commission exemption as an affirmative defense,[2] they are not entitled to summary judgment on this ground because a genuine dispute exists as to whether more than half of Morrissey's compensation in a representative period consisted of commissions on goods or services. *See* 29 U.S.C. § 207(i). Morrissey's employment

---

[2] Morrissey's waiver argument could seemingly be construed to apply to Defendants' administrative exemption defense as well, though her opposition is not clear on this point. *See* ECF 48-1 at 8 (contending that Defendants "failed to provide Morrissey any notice that they would rely upon the 7(i) Exemption (or any other specific exemption for that matter)"). To the extent that Morrissey argues that Defendants waived their administrative exemption defense, that argument is rejected for the same reasons discussed above.

agreement stated that her "[p]ay will be based on commission as a percentage of net sales profit," with her guaranteed biweekly salary serving as an "unrecoverable draw against the salary of $40,000/year." ECF 45-5 at 4. According to Defendants, this language dictates that Morrissey's compensation was 100 percent commission-based, because any weekly salary she received was in fact an unrecoverable draw against her commissions in the amount of $40,000 per year. *See* 29 C.F.R. § 779.413(a)(5) (recognizing, as a bona fide method of commission payments, a system by which retail employees are "paid a fixed weekly, biweekly, semimonthly, or monthly 'advance,' 'guarantee,' or 'draw,'" which is then supplemented at periodic intervals "by any additional amount by which his commission earnings exceed the amounts previously paid").

Even accepting Defendants' interpretation of the payment provision, there is a genuine issue of material fact as to whether Morrissey was actually paid commissions in accordance with her employment agreement. Robertson testified that CES lacked any ability to accurately calculate Morrissey's commissions for the first 15 months of her employment. ECF 48-2 at 31:3-34:8. Finally, in January, 2020, Robertson sought assistance from an accountant to calculate Morrissey's commissions for one quarter of 2019. *Id*. 33:12-34:8. But Robertson testified that as of August, 2020, Robertson's accountant still had not ascertained Morrissey's commissions for that (or any other) time period. *Id*. at 433:12-17. The evidence therefore indicates that Defendants could not calculate Morrissey's commissions for the vast majority of her 26 months of employment. Furthermore, while Morrissey did receive regular payments labeled as "bonuses" in CES's payroll system, the parties dispute whether these were in fact commission payments for amounts Morrissey was owed beyond her base salary or whether they were simply random payments. Ultimately, Defendants' conclusory argument that Morrissey's pay consisted solely of commissions "lacks the relevant facts which show the applicability of the [bona fide commission]

exemption." *Flores v. 2K Clevelander*, LLC, No. 1:16-CV-24083-UU, 2017 WL 5054565, at *6 (S.D. Fla. May 4, 2017) (denying summary judgment where the defendant "did not (and still does not) have the records needed to show that [it] actually utilized" the claimed commission structure). While Defendants can try to persuade a factfinder of the merits of their position, at present, there is a triable issue as to whether Morrissey's compensation was commission-based in a way that would render her exempt under 29 U.S.C. § 207(i).

### 2. Administrative Exemption

Alternatively, Defendants assert that Morrissey falls under the FLSA's overtime exemption for workers "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). This exemption applies to employees (1) who are compensated at a rate of not less than $684 per week;[3] (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015). "In FLSA exemption cases, 'the question of how employees spend their working time . . . is a question of fact,' but the ultimate question of whether the exemption applies is a question of law." *Id*. (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (alteration adopted)).

At a minimum, this Court agrees with Morrissey that a genuine dispute exists with respect to the second element: whether Morrissey's "primary duty" at CES involved "work directly related

---

[3] The minimum salary was increased to its current amount as of January 1, 2020. *See* 29 C.F.R. § 541.200(a); 84 Fed. Reg. 51230, 51306 (Sept. 27, 2019). Previously, the minimum salary amount was $455 per week. Morrissey concedes that her weekly salary was more than the minimum amount required to satisfy the administrative exemption. ECF 48-1 at 26.

to the management or general business operations" of CES. *Id*. "Primary duty" in this context means "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Furthermore, to meet the "directly related" requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, *as distinguished, for example, from . . . selling a product in a retail or service establishment*." 29 C.F.R. § 541.201(a) (emphasis added). "In the end, the critical focus regarding this element remains whether an employee's duties involve the running of a business as opposed to the mere day-to-day carrying out of the business's affairs." *Calderon*, 809 F.3d at 123 (quotations omitted). Here, the record evidence indicates that at least some of Morrissey's work related to assisting Robertson in running the business. For example, Morrissey engaged with a computer hardware provider to get CES designed as a certified reseller; joined the local Chamber of Commerce; updated CES's marketing materials; and participated in a "special project" at Robertson's request to negotiate with the Comptroller of Maryland regarding an issue with CES's taxes. ECF 45-2 at 318:6-17; 320:10-12; 349:4-21; 445:2-448:18. On the other hand, Robertson testified that he hired Morrissey because he "had nobody to do sales at all," and that Morrissey's main focus in her role was bringing in sales. ECF 48-2 at 94:18-95:4.[4] Morrissey similarly testified that she was CES's "only salesperson" and that, after an initial transition period during which she worked on administrative tasks, she turned her focus to sales work. ECF 48-3 at 289:11-13, 317:3-6. Thus, even assuming *arguendo* that the isolated activities and projects listed above were managerial or administrative in nature, a genuine dispute exists as to whether Morrissey spent the majority of her time at CES

---

[4] Notably, Robertson contrasted Morrissey's role at the company with that of his ex-wife, who previously served as CES's general manager and was responsible for "entire day to day operations." ECF 48-2 at 36:12-13. When asked during his deposition if Morrissey's role was similar to his ex-wife's, Robertson answered "not at all" and explained that Morrissey's priority was "bringing in sales" and "building the business up through sales." *Id*. at 36:2-21.

on those types of activities, as distinguished from routine sales of CES's products. *See* 29 C.F.R. § 541.700(b) ("[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."); *see also Shockley*, 997 F.2d at 26 ("[T]he amount of time devoted to managerial duties, and the significance of those duties, present factual questions . . . .").

To summarize, genuine disputes of fact preclude this Court from concluding as a matter of law that Morrissey is exempt from the FLSA's overtime requirements under either the bona fide commission or administrative exemptions. Defendants' motion for summary judgment on Count I will be denied.

### B. MWHL Overtime Claim (Count II)

Defendants also seek summary judgment on Morrissey's overtime claim under the MWHL. *See* Md. Code Ann., Lab. & Empl. § 3-415(a). "The MWHL is the State parallel to the FLSA, and the requirements of that provision mirror those of the federal law." *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (quotations omitted); *see also* Md. Code Ann., Lab. & Empl. § 3-403(1), (5) (exempting from the MWHL "administrative, executive, or professional" employees, as well as those employees who are "compensated on a commissioned basis"). For the reasons discussed above, Defendants have failed to establish at this stage that Morrissey is an exempt employee under either the FLSA or MWHL. Defendants' motion will be denied with respect to Count II.

### C. Other State Law Claims (Counts III-VII)

Finally, Defendants move to dismiss Morrissey's other state law claims pursuant to 28 U.S.C. § 1367(c)(3), which allows a district court to decline supplemental jurisdiction over state law claims if that court "has dismissed all claims over which it has original jurisdiction." Because

Morrissey's FLSA claim survives, however, that provision is inapplicable. And Defendants fail to offer any other basis for declining supplemental jurisdiction over Morrissey's state law claims, which undisputedly arise out of the same nucleus of fact as her federal claim. Accordingly, Defendants' motion with respect to Counts III-VII will also be denied.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, ECF 45, is denied. A separate order follows.

Dated: March 9, 2023

/s/
Stephanie A. Gallagher
United States District Judge